IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMES C. PIERSON, | ) |
| | ) Case No. |
| Plaintiff, | ) |
| | ) Judge |
| v. | ) Magistrate Judge |
| | ) |
| QUAD/GRAPHICS PRINTING CORP., | ) |
| QUAD/GRAPHICS, INC., | ) Jury Demand |
| QG PRINTING CORP., and QG, LLC, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

For his Complaint against Defendants Quad/Graphics Printing Corp., Quad/Graphics, Inc., QG Printing Corp., and QG, LLC (collectively referred to as QG), Plaintiff James C. Pierson states:

### I. PARTIES

1. Plaintiff Pierson is a citizen and resident of Clarksville, Tennessee, and a former employee of QG.

2. QG is a Delaware and/or a Wisconsin corporation with its principal place of business in Sussex, Wisconsin.

3. QG may be served with process through its registered agent, National Registered Agents, Inc., 2300 Hillsboro Road, Suite 305, Nashville, Tennessee 37212.

### II. JURISDICTION AND VENUE

4. This is an action for age discrimination and retaliation in employment brought under the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.* (THRA). The Court has jurisdiction under 28 U.S.C. §§ 1332 and 1367(a) as QG is a Delaware and/or a

Wisconsin corporation with its principal place of business in Wisconsin and the amount in controversy in this case exceeds the jurisdictional minimum of $75,000. Venue is proper under 28 U.S.C. § 1391.

5. Mr. Pierson reserves the right to amend this complaint to assert age discrimination and retaliation claims under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.* (ADEA). Mr. Pierson has timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC). Once he obtains a notice of suit rights from the EEOC he may amend this complaint within 90 days of his receipt of such notice to timely assert claims for violations of the ADEA.

### III. FACTS

**A. QG Discharged Pierson Because of Age**

6. Plaintiff Pierson is 62 years old as of the date of the filing of this complaint. He worked for Defendant QG at its Dickson, Tennessee, plant from March 6, 2005, until QG terminated his employment on August 23, 2011.

7. Mr. Pierson was qualified for his job as Engineering Manager/Plant Facilities Manager at QG based on his education, experience in the relevant industry, and possession of the skills required to perform his job. He has a bachelor of science degree in industrial engineering and over 39 years' experience in the printing industry. Mr. Pierson performed his job at QG in an excellent manner and received excellent performance evaluations.

8. On August 23, 2011, QG abruptly discharged Mr. Pierson without notice, warning, or opportunity to cure any alleged deficiencies in his job performance. Mr. Pierson's discharge came as a "surprise" to him and to QG's Human Resources Manager at its Dickson plant, who stated this to him.

2

9. QG replaced Mr. Pierson with a 47 year-old individual, David DePriest, who is substantially less qualified for the position that he has assumed than Mr. Pierson. Mr. DePriest had only been employed by QG for less than two years and this was his only experience in the printing industry, making him far less experienced than Mr. Pierson. QG also treated Mr. Pierson differently in the terms, conditions and privileges of employment than it treated similarly situated, substantially younger employees. QG retained, transferred and/or hired those employees.

10. QG allegedly terminated Mr. Pierson's employment solely as part of an alleged "reduction in forces" but did not terminate the employment of any other employees at its Dickson plant as part of this alleged reduction in forces. QG gave Mr. Pierson no other reasons for his discharge at the time that it communicated its decision to him.

11. Since the time that it discharged Mr. Pierson QG has asserted that it also terminated his employment because his replacement was involved in "energy procurement"; because Mr. Pierson was "not well-liked" and was "not a team player"; and because Mr. Pierson's performance was poor in that he failed or refused to perform certain aspects of his job.

12. QG's alleged reasons for discharging Mr. Pierson are pretexts for age discrimination. QG did not conduct a bona fide reduction in forces at its Dickson plant. Mr. Pierson was the only employee out of approximately 220 to be discharged as part of the alleged reduction in forces at issue. Mr. DePriest did not carry his former job duties at QG's Nashville plant into his new position as Plant Facilities Manager at the Dickson plant on any permanent or long-term basis. Rather, Mr. DePriest's prior job responsibilities with QG were coming to an end due to the completion of certain projects and he needed another position to fill. Mr. DePriest has been and is substantially performing Mr. Pierson's former job duties at the Dickson plant.

Further, since Mr. Pierson's discharge QG has contended that other factors motivated his discharge. Those reasons are false and pretextual, as well. QG has a progressive discipline system in place yet it never reprimanded, disciplined or counseled Mr. Pierson about any attitude or performance problems. QG further told Mr. Pierson that he was eligible for rehire. Similarly situated, substantially younger individuals had the same or similar alleged shortcomings or performance issues but were not discharged.

13. QG discharged Mr. Pierson because of his age. Shortly before his discharge, QG repeatedly expressed its plan to "change the culture" at the World Color (USA) Corp. plants that it had acquired in or about July 2010, including the Dickson plant at which Mr. Pierson worked.

14. QG has disproportionately eliminated older, well-qualified employees from its workforce as compared to younger employees. Its pattern and practice and its criteria for selecting employees for separation or non-retention have impacted older employees disproportionately in the terms, conditions and privileges of employment. QG has disproportionately and discriminatorily separated the employment of older employees like Mr. Pierson or refused to retain, offer transfers to, hire or rehire them. It has likewise disproportionately and discriminatorily replaced older employees like Mr. Pierson with, or retained, offered transfers to, hired or rehired substantially younger, less qualified individuals.

15. QG discriminated against Mr. Pierson and discharged him based upon his age in violation of the THRA.

**B. QG Refused to Hire or Rehire Pierson Because of Age and/or Because He Opposed Age Discrimination**

16. On August 25, 2011, Mr. Pierson applied for a Safety Manager position that QG had formally posted as available at its Franklin, Kentucky, plant. He reminded QG representatives of his interest in this position throughout September and early October 2011.

17. QG never interviewed Mr. Pierson for the Safety Manager position or contacted him to discuss it. Mr. Pierson was qualified for the Safety Manager and other positions within QG but has not received legitimate consideration for such jobs, despite his efforts and his expressed desire to continue working at QG. Prior to public advertisement, most of QG's available jobs are posted on its internal job posting board, which is not available to non-employees. QG has not attempted to make this internal job posting board available to Mr. Pierson or done anything else to inform him of available jobs for which he may be qualified.

18. On September 19, 2011, Mr. Pierson reported and expressed his concerns to QG that "[t]he reason [he] was selected for termination over [his] replacement with no prior warning . . . was related to age."

19. On September 21, 2011, having not heard back from QG as to whether the Safety Manager job for which he knew he was well-qualified and believed he should be considered was still available, and at the suggestion of QG's Human Resources Manager, Mr. Pierson attempted to internally "appeal" his termination with QG.

20. On October 11, 2011, QG (1) refused to consider Mr. Pierson's attempted "appeal" of his discharge despite acknowledging that it understood the "special circumstances" for his relatively minor delay in requesting the appeal, which was his pursuit of the Safety Manager position at the Franklin plant, and (2) informed Mr. Pierson that, as it "reviewed [his] case," the Safety Manager position "was closed."

21. QG did not inform Mr. Pierson between August 25, 2011, and October 11, 2011, that the Safety Manager position had been filled or was no longer available. Further, QG waited three weeks to inform Mr. Pierson that it had "determined that [it would] not be able to accept [his] appeal" because its "policy clearly states that [it] must receive a written request within 14

days of the disputed action" rather than promptly advising him that it would not accept his appeal for this alleged reason.

22. QG's reasons for refusing to hire or rehire Mr. Pierson and for ultimately refusing to consider his attempted internal appeal are pretexts for age discrimination and/or retaliation. The job for which Mr. Pierson applied was available when he applied and before he reported his concerns about age discrimination to QG. QG later hired, directed or appointed a substantially younger individual or individual who did not oppose or report age discrimination to assume the Safety Manager job or duties at the Franklin, Kentucky, plant. Further, QG had the discretion to "review[] all of the facts surrounding [Mr. Pierson's] appeal delay and [to] determine if [it could] still hear [his] appeal." QG could have considered Mr. Pierson's appeal or investigated his concerns of age discrimination but chose not to do so because he had reported his concerns of age discrimination to it. QG has accepted appeal requests received after the 14-day deadline stated in its policy for substantially younger employees and/or employees who did not oppose or report age discrimination.

23. QG discriminated and retaliated against Mr. Pierson and refused to hire or rehire him based upon his age and/or for opposing or reporting concerns about age discrimination, in violation of the THRA.

24. QG's conduct as described in this complaint was willful, intentional, malicious and/or recklessly indifferent to his protected rights.

25. As a result of QG's conduct as described in this complaint, Mr. Pierson has lost income and other privileges and benefits of employment and incurred medical expenses he otherwise would not have incurred; suffered embarrassment, humiliation, emotional distress,

anxiety, inconvenience, and loss of enjoyment of life; and has incurred attorney's fees, costs and litigation expenses.

## IV. RELIEF REQUESTED

Mr. Pierson respectfully requests:

1. A jury trial;

2. Back pay, back benefits and reimbursement of medical expenses;

3. Reinstatement or, alternatively, front pay and front benefits;

4. Compensatory damages for embarrassment, humiliation, emotional distress, anxiety, inconvenience, and loss of enjoyment of life;

5. Liquidated damages (when ADEA claims are joined);

6. Punitive damages for retaliation (when ADEA claims are joined);

7. Attorney's fees, costs and litigation expenses;

8. Prejudgment interest and, if applicable, post-judgment interest; and

9. Such other and further legal or equitable relief to which he may be entitled.

Respectfully submitted,

_____
Douglas B. Janney III (BPR No. 19112)
2002 Richard Jones Road
Suite B-200
Nashville, Tennessee 37215
(615) 742-5900

Attorney for Plaintiff